UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| WILD FISH CONSERVANCY,<br>15629 Main Street N.E.<br>Duvall, Washington 98019,<br><br>*Plaintiff*,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF COMMERCE,<br>1401 Constitution Ave., N.W.<br>Washington, D.C. 20230;<br><br>HOWARD LUTNICK, in his official capacity as the Secretary of Commerce,<br>1401 Constitution Ave., N.W.<br>Washington, D.C. 20230;<br><br>NATIONAL MARINE FISHERIES SERVICE,<br>1315 East-West Highway<br>Silver Spring, Maryland 20910;<br><br>*and*<br><br>EUGENIO PIÑEIRO SOLER, in his official capacity as the Director of the National Marine Fisheries Service,<br>1315 East-West Highway<br>Silver Spring, Maryland 20910,<br><br>*Defendants*. | Civ. No._____ |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

<u>INTRODUCTION</u>

1.      Plaintiff Wild Fish Conservancy (the "Conservancy") brings this action under the

Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531–1544, against Defendants the United

States Department of Commerce; Howard Lutnick, in his official capacity as the Secretary of

Commerce; the National Marine Fisheries Service; and Eugenio Piñeiro Soler, in his official

1

capacity as the Assistant Administrator for Fisheries (collectively, "the Service"), for failing to take statutorily required action on the Conservancy's Petition to Designate Evolutionarily Significant Units and List Alaska Chinook Salmon (*Oncorhynchus tshawytscha*) under the ESA ("Petition"). *See* 16 U.S.C. § 1533(b)(3)(B). Compliance with the statutory mandate is necessary to ensure the continued survival and recovery of Alaska Chinook salmon.

2. Chinook salmon (*Oncorhynchus tshawytscha*), pictured below, are the largest of the Pacific salmon and are therefore also known as king salmon.



3. Chinook salmon occur in coastal river basins throughout the Gulf of Alaska, from the southern end of the Aleutian Islands to the Alaska/British Columbia border. This includes Kodiak Island, Cook Inlet, and Prince William Sound.

4. Since at least 2007, Chinook salmon populations throughout Alaska have experienced significant declines in productivity and abundance.

5. Various factors have depleted the Chinook salmon populations, including fisheries and changes to the marine environment associated with climate change and with massive releases of hatchery pink and chum salmon by Japan, Russia, and Alaska.

6. The Conservancy submitted the Petition to list Alaska Chinook salmon under the ESA to the Service on January 11, 2024. 89 Fed. Reg. 45,815 (May 24, 2024). In response to the Conservancy highlighting the threats to these Chinook salmon populations, the Service issued a 90-day finding that the Petition "presents substantial scientific or commercial information indicating that the petitioned action may be warranted." *Id.* That finding triggered the requirement for the Service to determine whether listing of the species under the ESA is warranted or not warranted within 12 months of the Petition—by January 11, 2025. 16 U.S.C. § 1533(b)(3)(B).

7. Despite the Service's nondiscretionary duty to publish a 12-month finding within one year of the date it received the Petition, the Service still has not issued the required 12-month finding. Accordingly, the Conservancy seeks a declaration that the Service is in violation of its mandatory ESA obligation to make a 12-month finding on the Petition and an order requiring the Service to issue a 12-month finding on the Petition by a date certain.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over this matter under 16 U.S.C. § 1540(g) (ESA citizen suit provision) and 28 U.S.C. § 1331 (federal question). An actual, justiciable controversy now exists between the Conservancy and the Service and the requested relief is proper under 16 U.S.C. § 1540(g) (ESA citizen suit provision) and 28 U.S.C. §§ 2201–02 (declaratory and injunctive relief);

9. As required by the ESA citizen suit provision, 16 U.S.C. § 1540(g)(2)(C), the Conservancy provided the Service with notice of its violation of the ESA and of the Conservancy's intent to sue over the allegations in this Complaint more than sixty days prior to the filing of this Complaint through a letter dated and postmarked February 6, 2025 ("Notice Letter"). A copy of the Notice Letter is attached as **Exhibit 1** to this Complaint and incorporated herein by this reference. The Service has not remedied these violations of law.

10. The Conservancy and its members are adversely affected and/or aggrieved by the Service's violations of the ESA. The Service's failure to make the statutorily required 12-month finding on the Petition prevents the completion of the listing process and the implementation of substantive measures under the ESA to protect Alaska Chinook salmon. Without the protections of the ESA, Alaska Chinook salmon are more likely to continue to decline toward extinction. The Conservancy and its members are therefore injured because their scientific, professional, educational, recreational, aesthetic, moral, spiritual, and other interests in Alaska Chinook salmon, as described below, are threatened by the Service's failure to act.

11. The Service's failure to respond to the Petition has also resulted in informational and procedural injury to the Conservancy, because the Conservancy has been deprived of a timely opportunity to submit additional information and otherwise participate in the listing process in order to secure protective measures for the species. The Conservancy has also been deprived of scientific data and information that would be generated by the Service through its ESA-listing process and through the development of a recovery plan as required for listed species, which injures the Conservancy by depriving it of information and data that it would otherwise use to protect imperiled species and to otherwise advance its interests and those of its members and supporters that are integral elements of the organization's core mission. These are

actual, concrete injuries to the Conservancy caused by the Service's failure to comply with the ESA and its implementing regulations. The relief requested will redress those injuries.

12. The United States District Court for the District of Columbia is the proper venue under 16 U.S.C. § 1540(g)(3)(A) and 28 U.S.C. § 1391(e) because the violations alleged, and/or substantial parts of the events and omissions giving rise to the claim, occurred and are occurring within such District.

## PARTIES

### Plaintiff

13. Plaintiff Wild Fish Conservancy is a membership-based 501(c)(3) nonprofit organization incorporated in the State of Washington with its principal place of business in Duvall, Washington. The Conservancy is dedicated to the preservation and recovery of the Northwest's, including Alaska's, native fish species and the ecosystems upon which those species depend throughout the Northwest. The Conservancy brings this action on behalf of itself and its approximately 2,400 members. As an environmental watchdog, the Conservancy actively informs the public on matters affecting water quality, fish, and fish habitat in the Northwest through publications, commentary to the press, and sponsorship of educational programs. The Conservancy also conducts field research on wild fish populations and has designed and implemented habitat restoration projects. The Conservancy advocates and publicly comments on federal and state actions that affect the region's native fish and ecosystems. The Conservancy routinely seeks to compel government agencies to follow the laws designed to protect native fish species, particularly threatened and endangered species.

14. The Conservancy has organizational standing to bring this lawsuit. It has been actively engaged in efforts to ensure that Chinook salmon and their habitat are protected

throughout the Northwest, including Alaska. The Conservancy submitted the Petition, in part, to ensure that Alaska Chinook salmon are listed under the ESA and thereafter afforded ESA protections related to fisheries management, which includes but is not limited to federal review of state fishery management and enhancement plans. 50 C.F.R. § 223.203(b)(4)(i). Because the Service has failed to issue a 12-month finding on the Petition, Alaska Chinook salmon have not been afforded these protections. That lack of protections frustrates the Conservancy's core mission to preserve, protect, and restore wild fish and their ecosystems throughout the Northwest.

15. Moreover, the Service's failure to issue the required 12-month finding deprives the Conservancy of information and data that it would otherwise use to further the Conservancy's core mission and causes the Conservancy to expend resources on various efforts that would not be necessary if the Service timely complied with its ESA obligations. For example, in conducting the species' status review and making the 12-month finding, NMFS will consider the best available science and disclose information about Alaska Chinook salmon conditions. That information and data would be used by the Conservancy to further its mission of protecting salmonids and their ecosystems. For example, the Conservancy regularly utilizes scientific data and information to advocate for greater protections for wild fish, disseminating information to its members and policy makers through publications, its website, and comment letters addressing proposed agency actions. The Conservancy would use the information disclosed through the status review and 12-month finding to determine organizational priorities based on which specific stocks of Alaska Chinook need the most support and protection. The Conservancy would also use that information to assess conditions of Northwest Chinook salmon generally, and compare and contrast the health and status of Alaska Chinook with Chinook

originating from British Columbia, Oregon, Washington, and California. The Service's deprivation of data and information—which the Service was statutorily required to disclose to the Conservancy through its now-overdue 12-month finding—injures the Conservancy by requiring it to expend resources to obtain such data and information elsewhere, thereby diverting resources away from other objectives.

16. The Conservancy also has associational (or representational) standing. One or more of its members spend time in and around rivers in the Gulf of Alaska. The member(s) intend to continue to visit these areas in the future. The members observe, study, photograph, and otherwise enjoy fish, including Alaska Chinook salmon, and wildlife habitat in and around these waters. The members also fish for Chinook salmon in and around these waters. The members would like to continue fishing in these waters for, and otherwise enjoying, Alaska Chinook salmon and to increase fishing opportunities for this species, provided the species is able to recover to a point where such activities would not impede the species' conservation and recovery.

17. The Conservancy's members derive recreational, scientific, educational, conservation, spiritual, and aesthetic benefits from the Gulf of Alaska and its rivers, from the surrounding areas, from wild native fish species in those waters, including Alaska Chinook salmon, and from the existence of natural, wild, and healthy ecosystems.

18. The past, present, and future enjoyment of the Conservancy's interests and those of its members, including their recreational, scientific, aesthetic, and spiritual interests, have been, are being, and will continue to be harmed by the Service's failure to comply with the ESA as described herein and by the members' reasonable concerns related to the Service's ongoing legal violations. These injuries include reduced interactions with Alaska Chinook salmon and

therefore reduced enjoyment of time spent in and around the Gulf of Alaska and its rivers, fewer visits to those areas than would otherwise occur, and refraining from engaging in certain activities while visiting these areas, such as fishing, that would otherwise occur. These injuries also include an inability to fish for Alaska Chinook salmon due to their depressed status.

19. The Conservancy's injuries and those of its members are actual, concrete, and/or imminent, and are fairly traceable to the Service's violations of the ESA as described herein, such that the Court may remedy them by declaring that the Service's omissions and actions are illegal and/or issuing injunctive relief requiring the Service to comply with its statutory obligations. The Conservancy's members will benefit from increased enjoyment of time spent in and around the waters described above and/or will visit the areas more frequently if the Service is required by the Court to comply with the ESA.

20. For example, one member of Wild Fish Conservancy has a long history of fishing for Kenai River Chinook salmon in Alaska, and is adversely impacted by the Service's conduct here. This member lives in Washington, but grew up in Kenai, Alaska. He has fished for Alaska Chinook in the Kenai River and elsewhere in the Gulf of Alaska, like Cook Inlet. This member began fishing for salmon in the Kenai River in 1974, and historically, returned every year (except for three years) to fish for Chinook salmon, as well as sockeye, coho, and pinks. After moving to Washington in 1994, fishing for Alaska Chinook salmon in the Kenai River was always this member's motivation for making the annual trip to Alaska. This member did not make the annual trip to Kenai in 2013, 2015, and 2023 because of diminished Alaska Chinook populations. And though he traveled to Kenai in 2022 and 2024, the Chinook fishing season was closed, and he was only able to fish for other salmon, like sockeye and coho. This member expects the Chinook fishing season to be closed again this year (2025), so he is not planning to

make the trip to Alaska. He has personally seen the decline of Alaska Chinook populations, primarily through his trips to the Kenai River. In the late 1980s through late 1990s, he expected to catch 45 to 50 Alaska Chinook in a season, but in 2021 (the last time he was able to fish for Alaska Chinook), he caught just four. He loves fishing for, observing, and photographing Alaska Chinook, and he is devastated by the population's collapse and by the state and federal government's failure to take the necessary steps to protect the species. If Alaska Chinook populations recovered, he would immediately resume his annual trips to Alaska and fish for Alaska Chinook salmon.

21.　　The above-described interests of the Conservancy's members in Alaska Chinook salmon and their habitat depend on the conservation of the species. To protect those interests and Alaska Chinook salmon, the Conservancy submitted the Petition to list the species as threatened or endangered under the ESA. The Service's failure to comply with its nondiscretionary duty under the ESA to issue a 12-month finding puts Alaska Chinook salmon at greater risk of extinction and/or a persistent failure to achieve recovery where its protection under the ESA is no longer necessary.

**Defendants**

22.　　Defendant the United States Department of Commerce is an agency of the United States. Defendant Howard Lutnick is the Secretary of the U.S. Department of Commerce and is being sued in that official capacity. The ESA charges the Secretary of the U.S. Department of Commerce with implementing the ESA for anadromous fish species, including Chinook salmon, including responsibilities for making ESA listing decisions and promulgating regulations related thereto.

23. Defendant National Marine Fisheries Service, also known as NOAA Fisheries, is an agency within the U.S. Department of Commerce. Defendant Eugenio Piñeiro Soler is the Director of the National Marine Fisheries Service, also known as the Assistant Administrator for Fisheries, and is being sued in that official capacity. The U.S. Department of Commerce has delegated certain responsibilities and authorities under the ESA to the National Marine Fisheries Service, including the authority for making ESA listing decisions and promulgating regulations related thereto.

## STATUTORY FRAMEWORK

### Endangered Species Act

24. The ESA is a comprehensive federal statute declaring that endangered and threatened species are of "esthetic, ecological, educational, historical, recreational, and scientific value to the Nation and its people." 16 U.S.C. § 1531(a)(3). The purpose of the ESA is to "provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] to provide a program for the conservation of such endangered species and threatened species." *Id*. § 1531(b).

25. To this end, ESA section 4 requires that the Service protect imperiled species by listing them as either "endangered" or "threatened." *Id.* § 1533(a).

26. The ESA defines "species" to include "any subspecies of fish or wildlife or plants, and any distinct population segment of any species of vertebrate fish or wildlife which interbreeds when mature." *Id.* § 1532(16).

27. A species is "endangered" if it is "in danger of extinction throughout all or a significant portion of its range." *Id.* § 1532(6). A species is "threatened" if it is "likely to become

an endangered species within the foreseeable future throughout all or a significant portion of its range." *Id.* § 1532(20).

28. The Service must list a species as threatened or endangered based on one or more of the following factors: "(A) the present or threatened destruction, modification, or curtailment of its habitat or range; (B) overutilization for commercial, recreational, scientific, or educational purposes; (C) disease or predation; (D) the inadequacy of existing regulatory mechanisms; or (E) other natural or manmade factors affecting its continued existence." *Id.* § 1533(a)(1). The Service must base its listing determinations "solely on the basis of the best scientific and commercial data available . . . after conducting a review of the status of the species." *Id.* § 1533(b)(1)(A); 50 C.F.R. § 424.11(b).

29. The ESA's conservation measures apply only after the Service lists a species as threatened or endangered. For example, section 7 of the ESA requires all federal agencies to ensure that their actions do not "jeopardize the continued existence" of any listed species or "result in the destruction or adverse modification" of a species' "critical habitat." 16 U.S.C. § 1536(a)(2). Section 9 of the ESA prohibits any person from causing "take" of species listed under the statute as "endangered." 16 U.S.C. § 1538(a)(1). The take prohibition has been applied to certain species listed as "threatened" under the ESA through regulations promulgated under section 4(d) of the ESA, *id.* § 1533(d). 50 C.F.R. §§ 17.21, 17.31(a), 223.102, 223.203(a). Section 9 of the ESA prohibits violations of those regulations. 16 U.S.C. § 1538(a)(1)(G). Other provisions require the Service to designate "critical habitat" for listed species, *id.* § 1533(a)(3); require the Service to "develop and implement" recovery plans for listed species, *id.* § 1533(f); authorize the Service to acquire land for the protection of listed species, *id.* § 1534; and authorize

the Service to make federal funds available to states to assist in their efforts to preserve and protect threatened and endangered species, *id.* § 1535(d).

30. To ensure the timely protection of species at risk of extinction, Congress set forth a detailed process whereby citizens may petition the Service to list a species as endangered or threatened. The process includes nondiscretionary deadlines that the Service must meet so that species in need of protection receive the ESA's substantive protections in a timely fashion. The three required findings, described below, are the 90-day finding, the 12-month finding, and the final listing determination.

31. Upon receipt of a listing petition, the Service must, "to the maximum extent practicable, within 90-days," make an initial finding as to whether the petition "presents substantial scientific or commercial information indicating that the petitioned action may be warranted." *Id.* § 1533(b)(3)(A). If the Service finds that the petition does not present substantial information indicating that listing may be warranted, the petition is rejected and the process ends.

32. If, on the other hand, as in this case, the Service determines that a petition does present substantial information indicating that listing may be warranted, then the agency must conduct a full scientific review of the species' status. *Id.* § 1533(b)(3)(A). Upon completion of this status review, and within twelve months from the date that it receives the petition, the Service must make one of three findings: (1) listing is "not warranted"; (2) listing is "warranted"; or (3) listing is "warranted but precluded" by other pending proposals for listing species, provided certain circumstances are present. *Id.* § 1533(b)(3)(B).

33. If the Service's 12-month finding concludes that listing is warranted, the agency must publish notice of the proposed regulation to list the species as endangered or threatened in the Federal Register for public comment. *Id.* § 1533(b)(3)(B)(ii). Within one year of publication

of the proposed regulation, the ESA requires the Service to render its final determination on the proposal. *Id.* § 1533(b)(6)(A). At such time, the Service must either list the species, withdraw the proposed listing rule, or, if there is substantial disagreement about scientific data, delay a final listing determination for up to six months in order to solicit more scientific information. *Id.* §§ 1533(b)(6)(A)(i) and 1533(b)(6)(B)(i).

34. It is critical that the Service scrupulously follow the ESA's listing procedures and deadlines if species are to be protected in a timely manner because the ESA does not protect a species facing extinction until it is formally listed as endangered or threatened.

## FACTUAL BACKGROUND

### Threats to the Survival of Alaska Chinook Salmon

35. Chinook salmon are anadromous, migrating from the ocean upstream to the freshwater streams of their birth to reproduce.

36. Chinook salmon populations occur in rivers that flow into the Gulf of Alaska, from the southern end of the Aleutian Islands to the Alaska/British Columbia border, including on Kodiak Island, Cook Inlet, and in Prince William Sound.

37. Alaska Chinook salmon exhibit a predominately stream-type life-history, with their juveniles migrating to sea during their second year of life, normally within twelve to fifteen months after emergence from spawning gravels. An important exception is the Situk River Chinook salmon population that exhibits an ocean-type life history, where juveniles migrate to sea during their first year of life.

38. Alaska stream-type (also commonly known as "spring") Chinook salmon generally spawn in July and August. Fry emerge from the spawning gravel the following late spring and rear in their natal waters for a year (occasionally two years if water temperatures are

exceptionally cold and/or unproductive) before migrating to marine waters the following spring. Depending on the individual population, marine rearing may predominately take place in nearshore waters, offshore waters of southeast Alaska and the Gulf of Alaska, or further offshore in the North Pacific.

39. As detailed in the Conservancy's Petition, Alaska Chinook salmon face increasing threats from rising stream temperatures during spawning, incubation, and/or juvenile rearing, and from alterations in stream flow at critical times during spawning, incubation, and juvenile rearing caused by changing precipitation patterns due to climate change. Further, fish management decisions are changing the food web and associated productivity in the marine environment, exacerbated by ecological interactions with large-scale releases of hatchery pink and chum salmon in Alaska, Japan, and Russia. Alaska Chinook salmon are also impacted by several commercial fisheries through intentional harvest and as bycatch, including mixed-stock troll fisheries and industrial trawl fisheries.

40. Existing federal and state regulatory mechanisms have proven unable to protect and recover Alaska Chinook salmon and their habitats. Alaska Chinook salmon have suffered from chronically low abundance for much of the past two decades.

**The Service's Failure to Publish a 12-Month Finding**

41. The Service received the Conservancy's Petition to list Alaska Chinook salmon as threatened or endangered under the ESA on January 11, 2024. 89 Fed. Reg. 45,815 (May 24, 2024).

42. On May 24, 2024, the Service found that the Petition "presents substantial scientific or commercial information indicating that the petitioned action may be warranted." *Id.*

14

43. That finding triggered the requirement for the Service to make its 12-month finding within 12 months of the Service's receipt of the Petition—by January 11, 2025. 16 U.S.C. § 1533(b)(3)(B).

44. The Conservancy sent the Notice Letter on February 6, 2025, notifying the Service that it violated Section 4 of the ESA, 16 U.S.C. § 1533(b)(3)(B), by failing to make the required 12-month finding on the Petition.

45. The Service has failed to issue that 12-month finding as of the filing of this Complaint.

46. Upon information and belief, this lawsuit will have been a catalyst to the Service's completion of the 12-month finding on the Petition if that occurs during the pendency of this matter.

47. Upon information and belief, the Service has not committed to a completion date for the 12-month finding on the Petition as of the filing of this Complaint.

48. This lawsuit is necessary to compel the Service to promptly make the required 12-month finding on the Petition.

## **CLAIM FOR RELIEF**

### **Violation of Section 4 of the ESA**

49. The Conservancy re-alleges and reincorporates, as if fully set forth herein, each and every allegation in the preceding paragraphs of this Complaint.

50. The Service's ongoing failure to make the statutorily required 12-month finding on the Conservancy's Petition to list Alaska Chinook salmon under the ESA violates Section 4 of the statute, 16 U.S.C. § 1533(b)(3)(B), and its implementing regulations, 50 C.F.R. § 424.14(h)(2).

51. That violation constitutes a failure by the Service to perform a nondiscretionary duty under the ESA that is reviewable under the ESA citizen suit provision. 16 U.S.C. § 1540(g)(1)(C).

52. The Conservancy and its members are injured by the Service's failure to issue the required 12-month finding, and their injuries would be redressed if this Court grants the requested relief.

## **REQUEST FOR RELIEF**

For the reasons stated above, the Conservancy respectfully requests that this Court:

A. Declare that the Service has violated and is violating the ESA by failing to timely issue a 12-month finding on the Conservancy's Petition to list Alaska Chinook salmon under the ESA;

B. Order the Service to promptly issue a 12-month finding on the Conservancy's Petition by a reasonable date certain;

C. Grant such preliminary and/or permanent injunctive relief as the Conservancy may request during the pendency of this case;

D. Award the Conservancy its reasonable litigation expenses, including attorney's fees, expert witness fees, Court costs, and other expenses necessary for the preparation and litigation of this case under the citizen suit provision of the ESA, 16 U.S.C. § 1540(g)(4), the Equal Access to Justice Act, 28 U.S.C. § 2412, and/or as otherwise authorized by law; and

E. Provide such other relief as may be just and proper.

DATED this 8th day of May 2025.

/s/ William S. Eubanks II
William S. Eubanks II
DC Bar No. 987036
Eubanks & Associates, PLLC
1629 K Street NW, Suite 300
Washington, DC 20006
(970) 703-6060
bill@eubankslegal.com

Brian A. Knutsen
Oregon State Bar No. 112266
Application for admission *pro hac vice* forthcoming
Kampmeier & Knutsen, PLLC
1300 S.E. Stark Street, Suite 202
Portland, Oregon 97214
(503) 841-6515
brian@kampmeierknutsen.com